UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

NATHAN C. COOK,

      Plaintiff,

      v.                          CAUSE NO.: 3:18-CV-836-JD-MGG

RON NEAL, et al.,

      Defendants.

OPINION AND ORDER

Nathan C. Cook, a prisoner without a lawyer, filed a motion to amend his complaint. The court already explained to Cook that he did not need to file a motion for leave to amend his complaint because, pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), he may amend "once as a matter of course . . .."

Cook's amended complaint alleges that he was subjected to inhumane conditions while housed at the Indiana State Prison, that the conditions caused him to become ill, and that he received inadequate treatment for his illnesses. A filing by an unrepresented party "is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, pursuant to 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Inhumane Conditions

Cook alleges that pigeons, insects, and mice have taken up residence in the facility where he is being housed, and that there are droppings everywhere. These unsanitary conditions and the way cleanup was attempted have caused Cook to suffer from a fungal rash on his back and scalp, extreme tiredness, night sweats, back pain, and knee pain. Cook asserts that the "dust suppression method" should have been used to clean up the feces. According to Cook, this includes carefully wetting the feces to reduce the number of fungal spores that become airborne. Cook has sued Warden Ron Neal, Deputy Warden Kenneth Gann, Executive Director of Construction Services Kevin Orme, Major Jason Nowatzke, DCH Lieutenant Dylan Cabanaw, DCH Sergeant Jefferey Fizer, Sanitation Supervisor Adrianne Gordon, and Sanitation Lieutenant Derek Boyan for monetary damages and injunctive relief. He further alleges that each of these defendants knew the dangers posed by removing the droppings inappropriately but still did not take appropriate precautions.

The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008). In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks whether the alleged deprivation is "sufficiently serious" that the action or inaction of a prison official leads to "the denial of the minimal civilized measure of life's necessities." *Id*. Although "the Constitution does not mandate

comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), inmates are entitled to adequate food, clothing, shelter, bedding, hygiene materials, and sanitation. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). On the subjective prong, the prisoner must show the defendant acted with deliberate indifference to the inmate's health or safety. *Farmer*, 511 U.S. at 834. As the Seventh Circuit has explained:

> [C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so.

*Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal citations and quotation marks omitted); *see also Reed v. McBride*, 178 F.3d 849, 855 (7th Cir. 1999) (where inmate complained about severe deprivations but was ignored, he established a "prototypical case of deliberate indifference").

Here, Cook alleges that he has intermittently resided in a facility infested with pigeons, insects, and mice since April of 2014,[1] resulting in physical injuries. Prolonged exposure to infestations such as this can amount to an Eighth Amendment violation. *See Davis v. Williams*, 216 F.Supp.3d 900, 907-08 (N.D.Ill. 2016). Cook's allegations satisfy the objective prong of the inquiry. With respect to the subjective prong, Cook alleges that

---

[1] He was moved to a different cell house in January of 2017, and then transferred to Wabash Valley Correctional Facility. The dates in the amended complaint are confusing, but it appears that he was hospitalized briefly, returned to Indiana State Prison, transferred to Wabash Valley Correctional Facility, and hospitalized a second time. He then returned to ISP again in November of 2017, and he has remained there since that time.

Warden Neal, Deputy Warden Gann, Kevin Orme, Major Nowatzke, Lieutenant Cabanaw, Sergeant Fizer, Adrianne Gordon, and Lieutenant Boyan were each aware of this situation, but they took no action to fix it. These allegations permit an inference that these defendants were each deliberately indifferent to Cook's right to sanitary living conditions, as required by the Eighth Amendment. Giving Cook the inferences to which he is entitled, he may proceed on this claim against these defendants in their official capacities for injunctive relief and in their individual capacities for compensatory and punitive damages.

Cook also alleges that Sergeant Fizer and Lieutenant Cabanaw failed to remove him during fires, and that he was subjected to harmful amounts of smoke that placed him in danger of asphyxiation. He does not indicate when the fires occurred, where they occurred in relationship to his cell, or that he suffered any actual harm from the exposure. Likewise, Cook alleges that the showers at the facility contain toxic black mold, but he says little more about this allegation or how the mold harmed him. These vague allegations do not state a claim.

Cook's complaint includes unnamed defendants responsible for the conditions at Indiana State Prison. However, as a practical matter Cook's case cannot proceed against unnamed defendants. *See Wudtke v. Davel*, 128 F.3d 1057, 1060 (7th Cir. 1997)("[I]t is pointless to include lists of anonymous defendants in federal court; this type of placeholder does not open the door to relation back under Fed. R. Civ. P. 15, nor can it

4

otherwise help the plaintiff."). If he determines the identity of the unknown defendants, he may seek leave to file an amended complaint that includes them.

Inadequate Medical Care

Cook alleges that he has received inadequate medical care for his medical conditions caused by exposure to fungus, which include skin rashes, tiredness, night sweats, back pain, and knee pain. Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer*, 511 U.S. at 834. A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). On the subjective prong, the plaintiff must establish that the defendant "acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005). For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to

5

demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). Although the Eighth Amendment does not entitle an inmate to a specific form of treatment, prison medical staff cannot simply continue with a course of treatment that is known to be ineffective. *Greeno*, 414 F.3d at 654-55. Furthermore, a delay in providing treatment can constitute deliberate indifference when it causes unnecessary pain. *Arnett v. Webster*, 658 F.3d 742, 752-53 (7th Cir. 2011); *Grieveson v. Anderson,* 538 F.3d 763, 779 (7th Cir. 2008). Cook has sued Dr. Joseph M. Thompson for monetary damages, and Dr. Nancy Marthakis for both monetary damages and injunctive relief.

Dr. Joseph M. Thompson

Sometime after the sanitation crew power washed the walls and ranges, Cook developed a rash on his back and scalp. He filled out a health care request form and was seen by Dr. Thompson. Dr. Thompson prescribed Miconazole Nitrate (an antifungal creme) for his back, but nothing for his scalp. The medication did not help so he saw Dr. Thompson again. Dr. Thompson prescribed Selenium Sulfide Topical Suspension USP, lotion for the scalp, but nothing for his back, which continued to get worse. The new medication made his hair fall out. He saw Dr. Thompson again, told him about his hair falling out, and told him that he now had sores and cracks on his scalp and skin. He also told Dr. Thompson that he was extremely tired, having night sweats, and had pain in his knee joints and lower back. Dr. Thompson prescribed A&D

6

ointment for his scalp and nothing for his back, and he ordered no further testing for his tiredness, night sweats, or joint pain.[2]

On March 24, 2017, Cook was having chest pain. A nurse gave him a breathing treatment. The next morning, he returned to the medical department because he was not any better. Additional tests were performed, and he was taken to the hospital via ambulance. While hospitalized, a mass was identified on Cook's left kidney, along with fluid around his heart and swollen lymph nodes. The fluid was drained, and a biopsy was performed. In May of 2017, while housed at Wabash Valley Correctional Center, Cook was told that the mass on his kidney was cancerous and that the kidney would need to be removed.

In July of 2017, Cook was sent to IU Health Hospital to have his kidney removed. Because his lymph nodes were still swollen, a biopsy and other testing was performed. He was diagnosed with several illnesses caused from breathing fungus spores, including histoplasmosis and blastomyces. A doctor at the hospital told Cook that the histoplasmosis would go away on its own, but he also prescribed Dulcotox 5mg for the rash. This medication did not help.

---

[2] It is unclear from the amended complaint when Cook's rash began, or when these initial visits with Dr. Thompson occurred. "Indiana's two-year statute of limitations . . . is applicable to all causes of action brought in Indiana under 42 U.S.C. § 1983." *Snodderly v. R.U.F.F. Drug Enforcement Task Force*, 239 F.3d 892, 894 (7th Cir. 2001). Cook's first complaint was mailed on October 9, 2018, so claims arising prior to October 9, 2016, are barred by the applicable statute of limitations. For purposes of this screening order, the court will presume that these events occurred reasonable close to the incident requiring Cook's hospitalization in March of 2017, and are therefore timely filed.

Cook returned to ISP in November of 2017, and he saw Dr. Thompson in January of 2018. He told Dr. Thompson that his rash continued to get worse. Dr. Thompson prescribed Miconazole Nitrate cream again, even though Cook reminded Dr. Thompson that the creme did not work the first time it was prescribed.

Cook saw the physician that performed his surgery for a follow-up exam and told the doctor that he had been exposed to histoplasmosis but not treated. The doctor recommended he see a disease specialist. Cook told Dr. Thompson what the surgeon said about seeing a disease specialist, but no appointment was ever made, and no further testing was performed. He told Dr. Thompson he was in severe pain, but still he did nothing to help him. Shortly thereafter, Dr. Thompson retired. These allegations state a claim against Dr. Thompson for deliberate indifference to his need for medical treatment for his skin rashes and other ailments caused by exposure to fungus, and Cook will be permitted to proceed against Dr. Thompson in his individual capacity for monetary damages.

Cook now believes that he was misdiagnosed with cancer. He explains that it appeared that he had renal cell carcinoma, but blastomyces look like renal cell carcinoma. If the doctors knew that he had been exposed to fungal diseases, they would have tested for this and likely learned that he did not have cancer. He believes his condition could have been treated without removing his kidney. Regardless, Dr. Thompson did not make the determination that Cook's kidney should be removed. If his kidney was removed unnecessarily, it was not caused by Dr. Thompson.

### Dr. Nancy Marthakis

Following Dr. Thompson's retirement, Cook filled out a health care request form indicating that the creme was not working. He saw Dr. Marthakis on January 24, 2018, about his rash. Dr. Marthakis said she would order a shampoo for Cook, but he never got the shampoo.

He filled out another health care request form on March 19, 2018, indicating that his rash was getting worse and he needed to see a specialist. He was seen by Dr. Marthakis and given a steroid injection. The injection caused severe pain in his arm, but it did not help the rash.

On April 9, 2018, defendant Orme authorized the removal of chicken wire designed to help keep birds out. Cook filled out health care requests because he was distressed that the chicken wire was being removed, and his rash was not getting better. He was given another steroid injection on April 11, 2018.

On April 19, 2018, he filled out another health care request asking to see his lab results. Dr. Marthakis saw Cook on May 1, 2018. At that appointment, Dr. Marthakis threatened to end Cook's appointment if he kept asking questions. On April 20, 2018, Dr. Marthakis prescribed Betamethasone Dipropionate Cream USP (Augmented) 0.005%. Cook used the cream as directed but it did not help. On May 2, 2018, Dr. Marthakis prescribed Triamcinolone Acetonide Ointment USP, 0.1% for the rash on his back even though Cook had already told Dr. Marthakis that the creams were not helping. On May 4, 2018, Dr. Marthakis performed biopsies of Cook's scalp and back.

9

According to Cook, Dr. Marthakis intentionally performed the punch biopsy on his back without waiting for the numbing medication to take effect. On May 5, 2018, Cook returned to medical to pick up shampoo and have his wound checked. On May 14, 2018, Cook went to the medical department to pick up Doxycycline HYC 100mg capsules prescribed by Dr. Marthakis. And, he sent a health care request asking for his biopsy results, as well as the result from his last two chest x-rays. He was told that Dr. Marthakis went over the results with him on May 1, 2018. Cook did eventually learn the procedure for obtaining copies and obtained the results. He learned that the rash on his scalp was Acute Folliculitis, and the rash on his back was Perifolliculitis – both fungal diseases.

On June 6, 2018, Cook sent a health care request because the Doxycycline was not helping the rash on his back, although it did help the rash on his scalp for a short time. On June 26, 2018, Cook sent a health care request advising Dr. Marthakis that the Doxycycline had not improved his rash and that the Triancinolone and or Betamethasone Cream discolored his skin.

Cook's skin remains discolored, and he still has rashes on his back and scalp. The rashes itch and burn, particularly when he exercises or showers. These allegations state a claim of deliberate indifference to his medical needs, and Cook will be permitted to proceed against Dr. Marthakis in her official capacity for injunctive relief and her individual capacity for monetary damages.

State Law Negligence Claim

In addition to his federal claims, Cook asserts that the defendants were negligent in violation of Indiana law. Cook, however, cannot proceed on a State law claim for negligence because, if the defendants' actions were merely negligent, they would have been acting within the scope of their employment. "Under the Indiana Tort Claims Act, there is no remedy against the individual employee so long as he was acting within the scope of his employment." *Ball v. City of Indianapolis*, 760 F.3d 636, 645 (7th Cir. 2014).

Preliminary Injunction

Lastly, Cook's complaint contains a request for preliminary injunction, although he did not file a separate motion, as required by this court's local rules. *See* N.D. Ind. L.R. 65-1 ("The court will consider requests for preliminary injunctions only if the moving party files a separate motion for relief."). Cook asks that the court order that screens be placed on windows to keep birds out, that power washing of bird feces stop and that feces instead be removed properly, that Cook be removed during fires and when excessive smoke is present, and that he receive adequate medical care, including seeing a disease specialist. The court will defer ruling on Cook's request for a preliminary injunction until the Warden has filed a declaration in response to this request and Cook has had an opportunity to reply.

For these reasons, the court:

(1) DENIES Nathan C. Cook's Motion to Amend Complaint (ECF 8) as MOOT;

(2) DIRECTS the clerk to file Nathan C. Cook's proposed amended complaint (ECF 8-1);

(3) GRANTS Nathan C. Cook leave to proceed against Warden Ron Neal, Deputy Warden Kenneth Gann, Executive Director of Construction Services Kevin Orme, Major Jason Nowatzke, Lieutenant Dylan Cabanaw, Sergeant Jefferey Fizer, Sanitation Supervisor Adrianne Gordon, and Sanitation Lieutenant Derek Boyan in their individual capacities for compensatory and punitive damages for subjecting Nathan C. Cook to unsanitary living conditions from being housed with pigeons, insects, and mice while housed at the Indiana State Prison, in violation of the Eighth Amendment;

(4) GRANTS Nathan C. Cook leave to proceed against Warden Ron Neal, Deputy Warden Kenneth Gann, Executive Director of Construction Services Kevin Orme, Major Jason Nowatzke, Lieutenant Dylan Cabanaw, Sergeant Jefferey Fizer, Sanitation Supervisor Adrianne Gordon, and Sanitation Lieutenant Derek Boyan in their official capacities for injunctive relief to provide Nathan C. Cook with sanitary living conditions, as required by the Eighth Amendment;

(5) GRANTS Nathan C. Cook leave to proceed against Dr. Joseph M. Thompson in his individual capacity for compensatory and punitive damages for failing to provide Nathan C. Cook with adequate medical care for his skin condition and other ailments caused by exposure to fungus while housed at the Indiana State Prison, in violation of the Eighth Amendment;

(6) GRANTS Nathan C. Cook leave to proceed against Dr. Nancy Marthakis

in her individual capacity for compensatory and punitive damages for failing to provide Nathan C. Cook with adequate medical care for his skin condition and other ailments caused by exposure to fungus while housed at the Indiana State Prison, in violation of the Eighth Amendment;

(7) GRANTS Nathan C. Cook leave to proceed against Dr. Nancy Marthakis in her official capacity for injunctive relief to provide Nathan C. Cook with adequate medical care for his skin condition and other ailments caused by exposure to fungus while housed at the Indiana State Prison, in violation of the Eighth Amendment

(8) DISMISSES all other claims;

(9) DISMISSES John Does;

(10) DIRECTS the clerk and the United States Marshals Service to issue and serve process on Warden Ron Neal, Deputy Warden Kenneth Gann, Executive Director of Construction Services Kevin Orme, Major Jason Nowatzke, Lieutenant Dylan Cabanaw, Sergeant Jefferey Fizer, Sanitation Supervisor Adrianne Gordon, Sanitation Lieutenant Derek Boyan, and Dr. Nancy Marthakis at the Indiana Department of Correction with a copy of this order and the amended complaint, pursuant to 28 U.S.C. § 1915(d);

(11) DIRECTS the clerk and the United States Marshals Service, pursuant to 28 U.S.C. § 1915(d), to issue and serve process, along with a copy of the amended complaint and this order, on Dr. Joseph Thompson at his last known address since he is no longer working at the Indiana Department of Correction;

(12) ORDERS, pursuant to 42 U.S.C. § 1997e(g)(2), that Warden Ron Neal, Deputy Warden Kenneth Gann, Executive Director of Construction Services Kevin Orme, Major Jason Nowatzke, Lieutenant Dylan Cabanaw, Sergeant Jefferey Fizer, Sanitation Supervisor Adrianne Gordon, Sanitation Lieutenant Derek Boyan, Dr. Joseph M. Thompson and Dr. Nancy Marthakis to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order; and

(13) CONSTRUES Nathan C. Cook's request for a preliminary injunction contained in his amended complaint as a motion and DIRECTS Warden Ron Neal to file a declaration in response to Nathan C. Cook's request for a preliminary injunction along with his answer.

SO ORDERED on December 27, 2018

/s/ JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT